[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is a suit for dissolution of marriage brought by the plaintiff husband against the defendant wife. A decree of dissolution was entered on November 1, 1990. The defendant, however, had not filed an appearance prior to that proceeding. On November 16, 1990, the defendant filed an appearance and a motion to reopen which was granted by agreement on December 13, 1990. The matter was, thereafter, assigned as a limited contested matter on April 19 and April 22, 1991.
The parties were married in New York City, New York on May 21, 1960. There have been four children issue of the marriage, three boys and a girl. The oldest, Ronald, age 30, works with the plaintiff in his piano refinishing business. Richard, age 28, is a graduate of Hofstra University. Robert, age 25, is a graduate of Queensboro Community College. Catherine, age 24, is enrolled in a pharmacy course at St. John's College.
The parties have been separated since 1985. The plaintiff testified that problems started in the marriage in the early 1970's and that the conditions of living at home became unbearable. The defendant testified she began college in 1970 and started working as a registered nurse in 1976. She stated there was no time to keep house and admitted that there were magazines and newspapers around on the floor and that she did permit "things to pile up. "
The plaintiff is engaged in the piano refinishing business. In 1982 he and a partner entered into a lease to run a piano refinishing business in Southport, Connecticut, on a two year lease with an option to buy. In 1984 they exercised that option and bought the business and also purchased the real property where the business was conducted. At that time the plaintiff was living in the family home in Beth Page, Long Island and commuted every day to his work, a one and a half hour commute in the morning and a two hour commute at night. In 1985 the plaintiff rented a condominium at Southport Woods and has lived away from the home in Beth Page since that time.
The plaintiff's business consists of the business itself, which is now owned entirely by the plaintiff, and one half ownership of the real property at 170 Pequot Avenue, Southport, Connecticut, which consists of an old house and a shop and showroom in the back. Prior to the operation of this CT Page 4480 business, the plaintiff had worked for Steinway for 25 years and had advanced to the position of Assistant Quality Control Manager, a position he maintained was as high as he could go.
The piano refinishing business did quite well until 1986. In 1986 the plaintiff's partner, Robert Philbin, left, the plaintiff buying out his share of the business. Mr. Philbin took his accounts with him and since that date, based upon the plaintiff's testimony, the business has deteriorated. Gross receipts of the business in 1988 were $300,000.00, in 1989 $270,000.00 to $280,000.00, and in 1990 $272,856.00 (see schedule C attached to plaintiff's financial affidavit). No analysis has been made of the disbursements in Schedule C, but it is to be noted that the plaintiff received $20,877.00 in drawings, $4,800.00 in payments to Grassy Hill Country Club, $5,400.00 in payments to Williamsburg Savings Bank (mortgage upon the home), $393.00 in payments to G. Fox, and other checks of a personal nature. The plaintiff reflects income of $600.00 per week on his financial affidavit. His income for 1985 was $45,980.00, for 1986 $33,211.00, for 1987 $29,920.00 and for 1988 $30,400.00 (see defendant's exhibits 4, 5, 6 and 7.). The plaintiff testified that gross receipts for the first quarter of 1991 were only $8,000.00.
It is the defendant's claim that the plaintiff is often paid in cash and that in 1984 he turned over $14,000.00 to her to put in the safe deposit box "to go south." The defendant testified that in 1982 the plaintiff was giving her $1,000.00 each week, that in 1983 she was receiving anywhere from $200.00 to $1,000.00 each week in cash.
In addition to the assets disclosed in the plaintiff's financial affidavit, the plaintiff's business is owed $5,600.00 by the plaintiff's live-in companion, Ruth Swartzkopf, plus what is owed by her refinishing business, Quality Furniture Refinishing, which business occupies space also at 170 Pequot Avenue in Southport. That business also owes for reimbursement of American Express charges. Additionally, the plaintiff's business owns pianos in inventory not reflected on the plaintiff's financial affidavit. His testimony was that there are 4 or 5 pianos in inventory valued at $1,500.00.
The plaintiff is 52 years of age. When the court inquired as to his health, he stated he had high blood pressure and high cholesterol, both of which were controlled by medication.
The defendant is a registered nurse with an associate's degree. She has not worked as a registered nurse since 1982. In 1983 she was injured in a fall. She has CT Page 4481 received Workers' Compensation benefits since that time, presently in the amount of $105.00 per week. Previously, this amount was $210.00 per week. The defendant suffers from a herniated disc at L-5 and bulging discs at L-3, L-4 and C-7. Her doctor recommends surgery only if there is further deterioration. She is in pain. The defendant cannot sit at a desk for any length of time and cannot lift. She is unable, therefore, to return to nursing. She hopes to return to school to obtain her bachelor's degree and master's degree and teach nursing.
The defendant has continued to live in the home in Beth Page purchased in 1970. The defendant values the property at $120,000.00 in her affidavit. The plaintiff values the property at $150,000.00 in his financial affidavit. The mortgage has been reduced to $4,200.00. The defendant testified that there are numerous repairs to be done upon this property and obtained an estimate of the repairs that have to be done. These total $35,758.00. (See defendant's exhibit 15.) The purchase price for this home was $19,500.00 and the mortgage originally was $17,500.00. The down payment came from the savings of the parties and money borrowed from the defendant's father.
The defendant has requested counsel fees in the amount of $3,500.00 in her claims for relief and has requested a "contribution toward counsel fees" at the conclusion of her direct examination. The defendant has offered no evidence as to the nature of the work performed by her counsel or the time involved in the performance of those services. The fact that the defendant failed to produce evidence as to the reasonableness of the legal fees which she was requesting does not justify the court in refusing to award them. Niles v. Niles, 9 Conn. App. 240, 250 (1986). The Niles case, however, involved an agreement to pay reasonable attorney's fees on the sale of real property and might be considered distinguishable from the immediate case. The case of Guaranty Bank Trust Co. v. Dowling, 4 Conn. App. 387 at 386 (1985), citing the case of Bizzoco v. Chinitz, 193 Conn. 304, 308 (1984), states, "Courts may rely on their general knowledge of what has occurred at the proceedings before them to supply evidence in support of an award of attorney's fees."
The court is in a position to evaluate the complexity of the issues presented in this case and the skill with which counsel has dealt with these issues. The court finds a fair and reasonable value of the services rendered by the defendant's counsel to the extent the court has observed those services to be $2,500.00. The court finds that, based upon the total financial resources of the parties, the denial of an award of CT Page 4482 counsel fees to the defendant would undermine its financial orders.
In not dealing with the subject of the purchase and subsequent sale of the Lake Mayopac property, the court has not failed to consider this issue. To discuss it further in this memorandum will serve no useful purpose in arising at the court's decision in this matter.
The questions presented in this case involve the issues of alimony, property division and counsel fees. In determining the proper orders in this case the court must consider the factors set forth in 46b-81 and 46b-82 of the General Statutes together with the provisions of 46b-62. With respect to alimony and a division of the property of the parties, the law to be considered has been stated as follows:
 To begin with, our alimony statute does not recognize an absolute right to alimony, General Statutes 46b-82; Thomas v. Thomas, 159 Conn. 477, 487, 271 A.2d 42 (1970); `This court has reiterated time and again that awards of financial settlement ancillary to a marital dissolution rest in the sound discretion of the trial court.' (Citation omitted.) Although the court is required to consider the statutory criteria of length of marriage, causes for dissolution, the age, health, station in life, occupation, amount and sources of income, assets and opportunity for future acquisitions of assets of each of the parties, (citation omitted), no single criterion is preferred over all the others. In weighing the factors in a given case, the court is not required to give equal weight to each of the specified items. Nevertheless, it is rather obvious that in making financial determinations, the financial circumstances, both actual and potential, are entitled to great weight.
Valente v. Valente, 180 Conn. 528, 530 (1980).
The court has considered all of the criteria of46b-81 and 46b-82 of the General Statutes together with all of the evidence and the case law. Since "[i]t would serve no useful function to require the trial court ritualistically to rehearse the statutory criteria that it has taken into account," Scherr v. Scherr, 183 Conn. 366, 368, this court will not CT Page 4483 recount those statutory criteria and the evidence, other than has been previously stated. "The court is not obligated to make express findings on each of these statutory criteria." Weiman v. Weiman, 188 Conn. 232, 234 (1982).
The court, in addition to the foregoing findings, finds as follows:
1. There is the requisite jurisdiction.
2. The allegations of the complaint have been proved and are true.
3. There has been an irretrievable breakdown of the marriage.
4. Each of the parties, in his or her own way, is at fault for the breakdown of the marriage, although the plaintiff bears the greater responsibility for the breakdown.
The court enters the following orders:
1. The marriage of the parties shall be dissolved on the grounds of irretrievable breakdown of the marriage.
2. The plaintiff shall quitclaim all of his right, title and interest in and to the real property at 35 Hayden Drive in Beth Page, New York to the defendant. From and after said transfer, the defendant shall be wholly responsible for all expenses of said property except for the mortgage to the Williamsburg Savings Bank for which the plaintiff shall be responsible and shall indemnify and hold harmless the defendant from any claims or demands thereon.
3. The plaintiff shall be responsible for the mortgage to Williamsburg Savings Bank and, if it includes payment on real estate taxes, he shall be responsible for the same until the present mortgage (listed as $4,200.00 in the plaintiff's financial affidavit) is fully paid. This may be paid by the plaintiff in accordance with its terms unless the defendant sells the property or refinances the property in which event the balance of the mortgage shall immediately become due and payable.
4. The plaintiff shall pay to the defendant by way of alimony the sum of $200.00 per week terminable upon the earliest to occur of the following events: death of either of the parties or the defendant's remarriage. Since Fairfield County Piano Repair is a sole proprietorship owned by the plaintiff, the court enters no order pursuant to 52-362 of the General Statutes. CT Page 4484
5. The plaintiff shall provide such information and make available to the defendant any present health insurance coverage for the maximum period provided by 38-262 (d) of the General Statutes or the federal law known as COBRA, such continued coverage, however, to be at the defendant's expense.
6. The plaintiff shall indemnify and hold harmless the defendant from all claims by the Internal Revenue Service for joint income tax returns filed during the marriage.
7. The tangible personal property at 35 Hayden Drive in Beth Page, New York shall be the property of the defendant free of any claim or demand by the plaintiff.
8. The plaintiff's interest in all tangible personal property at 170 Pequot Avenue, Southport, shall be his property free of any claim or demand by the defendant.
9. The plaintiff's interest in the real property at 170 Pequot Avenue, Southport, shall be his free of any claim or demand by the defendant.
10. The plaintiff's interest in the business known as Fairfield County Piano Repair shall be his free of any claim or demand by the defendant.
11. The tangible personal property in the plaintiff's possession shall be his free of any claim or demand by the defendant.
12. The remaining assets listed on the plaintiff's financial affidavit including the plaintiff's pension plan in United Furniture Workers shall be his free of any claim or demand by the defendant.
13. The remaining assets listed on the defendant's financial affidavit including her IRA shall be hers free of any claim or demand by the plaintiff.
14. The plaintiff shall be responsible for the liabilities listed in his financial affidavit and shall indemnify and hold harmless the defendant from any claims or demands thereon.
15. The defendant shall be responsible for the liabilities listed in her financial affidavit and shall indemnify and hold harmless the plaintiff from any claims or demands thereon. CT Page 4485
16. The plaintiff shall pay the defendant as counsel fees the sum of $2,500.00 to be paid on or before sixty (60) days from the date hereof.
Judgment shall enter in accordance with the foregoing.
EDGAR W. BASSICK, III, JUDGE